SUZANNE C. ALLENDER *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF CHICAGO ZONING BOARD OF APPEALS *et al.*, Defendants-Appellees.

First District (1st Division)    No. 78-142

Opinion filed August 7, 1978.

Paul E. Freehling, of Chicago (Pope, Ballard, Shepard & Fowle, of counsel), for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Mary Denise Cahill, Assistant Corporation Counsel, of counsel), for appellee City of Chicago Zoning Board of Appeals.

Robert E. Pfaff, of Chicago (Jenner & Block, of counsel), for appellee Development Management Group, Inc.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Development Management Group, Inc. (applicant), filed application before the Zoning Board of Appeals of the City of Chicago (Board), seeking a zoning variation with reference to a rear yard requirement on real estate on the south side of Chicago. The Board granted the requested variation. A group of citizens who live or own property in the vicinity of the premises (plaintiffs), filed an action against the Board and the applicant for administrative review. The trial court affirmed the decision of the Board. Plaintiffs have appealed.

Plaintiffs urge in this court that the Board had authority to condition the granted variance upon making of alterations to another part of the premises; the variance would detrimentally affect the character of the neighborhood and the authority of the Board to impose conditions is supported by precedent. The applicant contends that the findings and decision of the Board should be affirmed because there is ample evidence to support them and persons who call adverse witnesses are bound by their testimony which stands uncontradicted and unrebutted. In a separate brief, the Board urges that plaintiffs have no standing to seek administrative review of the decision of the Board and, even assuming that plaintiffs had such standing, the decision of the Board should be affirmed because it is supported by substantial evidence.

In our opinion, we are required to decide the following issues:

(1) Do plaintiffs have standing to prosecute this appeal?

(2) Regarding the variation sought by the applicant, is the decision of the Board in accordance with the manifest weight of the evidence or contrary thereto?

(3) Was the Board required to consider the matters raised by plaintiffs as a condition to the granting of the variation?

The subject property is vacant. On the east the property has a 300-foot frontage along Hyde Park Boulevard, a Chicago street running north and south. The north boundary of the property runs for 150 feet along 54th Street. The south boundary, also 150 feet, consists of an improved piece of property containing an apartment building of 3½ stories. The western boundary is an alley running north and south. Immediately to the west of the northern portion of the subject property and across the alley, there is an older high-rise building consisting of some nine stories.

The subject premises are zoned under the R-6 classification in the Chicago Zoning Ordinance. This qualifies the tract for erection of high-rise residential property. Some years ago construction of such a project

was started but never completed. Caissons were sunk into the ground where they remain to the present time.

Lawrence Booth, a qualified architect, testified for the applicant regarding the proposed improvements on the property. Applicant proposes to build 56 townhouses on the tract. The matter presented by the applicant to the Board is the rear yard requirement along the rear or western boundary of the tract which abuts upon the alley. It is agreed that the applicable city ordinance requires a setback of 30 feet from the abutting alley in this area. However, the plans developed by the applicant call for 56 parking spaces, one for each residential unit, to be provided on the western boundary. In such an instance the ordinances permit garage facilities to be built up to the alley which forms the western boundary of the property. However, in such case, the rear yard setback requirement of 30 feet would be applicable only above the garage area commencing at a height of 25 feet above grade. The applicant proposes that the rear or western portion of the premises be improved by the parking facility and four residential stories above it with five residential stories to be located along the eastern boundary of the tract. In both cases the total height of the project would be 45 feet above grade.

The applicant originally sought a variation which would reduce the rear yard setback requirement from 30 feet to 20 feet. At the hearings before the Board the applicant amended this request to 15 feet.

The site plan calls for a row of townhouses on the western portion of the tract facing east and for a similar row of houses on the eastern portion of the land facing west. The developer proposes to create a courtyard in between the front exposures of both rows of buildings. This space would be devoted to recreation and other purposes. The architect testified in behalf of the applicant that compliance with the rear yard requirements of the ordinance would reduce the width of the courtyard to 27 feet. If the variation were to be granted by the Board to 15 feet instead of 30 feet, the size of the courtyard could be increased to 42 feet.

The applicant also called James J. Curtis, a qualified real estate appraiser and consultant. He testified that granting of the requested variation would not, in his opinion, have any deleterious effect on adjacent property. He also testified that, in his opinion, the increased size of the courtyard would be of substantial benefit to the project in connection with light and air and that this would increase the desirability and value of the homes.

The applicant having rested, plaintiffs called Lawrence Booth, the architect, as an adverse witness. As in the case of the cross-examination of this witness by plaintiffs, the questions put to him were chiefly concerned with the issue of the treatment of the east boundary of the proposed project fronting on Hyde Park Boulevard. These questions concerning the

east boundary were placed into the record by plaintiffs after objection by the applicant to this line of questioning.

On cross-examination the architect testified that the applicant proposed to erect a masonry wall 7 feet in height along the whole length of the east boundary of the project, some 300 feet. However, it appears from the record and from statements made by the chairman of the Board that the erection of this type of wall would not constitute a violation of any ordinance of the city of Chicago. It also appears from the cross-examination and from the subsequent adverse examination of the architect by plaintiffs that the applicant had made no definite decision regarding the use of this proposed wall. On the contrary, after a number of meetings with some of plaintiffs or their representatives, several alternative treatments of the east edge of the proposed project had been discussed including various alternative design changes which would eliminate the need for the wall such as the use of landscaping supplemented with wrought iron or a solid fence behind it.

Plaintiffs then also called the real estate appraiser, James J. Curtis, for direct examination, apparently as their own witness. The witness testified once more that the variation requested by the applicant regarding the rear yard at the western edge of the subject premises would have no deleterious effect on the adjacent property or its market value. He also stated that in his opinion the proposed development would actually help property values in the area. The witness also testified that the proposed masonry wall on the east boundary would have no adverse effect on any property in the neighborhood.

Plaintiffs then called the developer, Louis R. Silverman. There was no statement that he was called as an adverse witness and the record shows direct examination of the witness by counsel for plaintiffs. This so-called testimony was directed largely to generalities. In part, the record shows a discussion between the witness, counsel for plaintiffs and the chairman of the Board regarding "trade offs" whereby certain parties would withdraw objections to the allowance of a variation on condition that additional unrelated changes be made in the proposed improvement.

James Clement, one of the plaintiffs, testified and stated his opinion that the wall on the east side of the project would be "a necessary extension of the alley variation." In part, this witness used other conclusions such as a statement the wall would threaten his investment in the ownership of nearby property; the wall would be "inconsistent with the open nature of Hyde Park Boulevard" and the wall built as proposed would be "deleterious."

In addition, a number of the plaintiffs and other objectors who were present at the hearing stated their names and addresses. A statement was

also made for the record by the alderman of the ward in which the proposed project is located.

On June 10, 1977, the three Board members, including the chairman, unanimously adopted a resolution which described the property and the requested variation. The resolution pointed out that the variation would reduce the rear yard to 15 feet instead of 30 feet, commencing above the garage premises. The record also shows that the chairman moved that the variation be conditioned upon the interior courtyard being limited to a depth of 40 feet with the entire project being set back 2 feet from the east property line. The resulting strip would be entirely planted "with buckthorn hedge to a height of 7 feet." In addition, the variation was to be conditioned upon various real estate covenants which might be related to the frontage of the subject property upon Hyde Park Boulevard insofar as said covenants would be "valid and enforceable." The record shows that this motion failed by a vote of 2 to 1. Two members of the Board voted negatively on the ground that the Board "has no authority to condition the granting of a rear yard variation by adding requirements which specifically affect the front yard of the subject development * * *."

It was further unanimously resolved by the Board that the requested variation reducing the rear yard to 15 feet instead of 30 feet was passed "upon condition that all applicable ordinances of the City of Chicago shall be complied with before a permit is issued." We will next consider in order the issues raised by the parties.

I.

■■ The issue of standing was not raised in the trial but was first raised in the brief filed by the Board. However, in our opinion, the Board as an appellee may "defend a judgment on review by raising an issue not previously ruled upon by the trial court if the necessary factual basis for the determination of such point was contained in the record." (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417, and authorities there cited.) We will therefore consider and pass upon this contention.

■■ The applicable principle here may be briefly stated. (222 *East Chestnut Street Corp. v. Board of Appeals* (1956), 10 Ill. 2d 132, 135, 139 N.E.2d 218, *cert. denied*, 353 U.S. 984, 1 L. Ed. 2d 1143, 77 S. Ct. 1284.)

> "We have heretofore held that the right to review a final administrative decision is limited to those parties of record in the proceeding before the administrative agency 'whose rights, privileges, or duties are affected by the decision.' (*Winston v. Zoning Board of Appeals,* 407 Ill. 588.)"

The court went on to affirm a decision dismissing the complaint of

plaintiff for administrative review. The court pointed out that allegations by plaintiff that the proposed variation would diminish the taxable value of its property were insufficient in the absence of proof to that effect. (222 *East Chestnut Street Corp. v. Board of Appeals*, 10 Ill. 2d 132, 136; see also *O'Hare International Bank v. Zoning Board of Appeals* (1972), 8 Ill. App. 3d 764, 766-67, 291 N.E.2d 349.) The standing of any person to appeal the result of an administrative review proceeding must appear as a factual matter in the record made before the administrative body. *Appel v. Zoning Board of Appeals* (1970), 120 Ill. App. 2d 401, 257 N.E.2d 9.

In the case before us we find a total lack of such proof in the administrative record. In our opinion, all of the evidence offered by plaintiffs was extraneous and beside the point. It pertained only to the situation concerning the east wall of the project. Plaintiffs offered no evidence concerning the requested variation of the rear yard facing upon the alley which was the only subject placed before the Board by the pending application. In addition none of the evidence produced by plaintiffs as regards the east boundary of the project is factual but consists of pure conclusions such as statements that the investment of one witness was threatened; a masonry wall would be inconsistent with the open aspect of Hyde Park Boulevard and such wall would be deleterious. There is no evidence by any expert regarding possible diminution of the value of any person's property by reason of the proposed project. On the contrary, there is uncontradicted expert testimony that the proposed masonry wall would have no adverse effect upon any property in the neighborhood.

■■ We accordingly conclude that plaintiffs' "rights, privileges, or duties" were not affected by the matter decided by the Board and thereafter on review by the trial court. It follows necessarily that plaintiffs have no standing in this court to prosecute their appeal. However, for purposes of completeness we will consider the remaining issues.

II.

Plaintiffs urge that the Chicago Zoning Ordinance gives the Board authority to grant a variance relating to one part of the subject premises on condition that alterations be made to another part of the tract. As above shown, the chairman of the Board was of the opinion that the Board had power and authority to condition the grant of the variance upon changes to another part of the proposed improvement. Two members of the Board were of the opinion that the Board had no authority to condition a grant of a variation to the rear yard upon proposed and unrelated changes in the subject development.

Plaintiffs first cite section 11.7—1 of the zoning ordinance of the city of Chicago (Municipal Code of Chicago, ch. 194A, par. 11.7—1) which provides:

"The Board of Appeals shall determine and vary the regulations of this comprehensive amendment in harmony with their general purpose and intent, only in the specific instances hereinafter set forth, where the Board makes a finding of fact based upon the standards hereinafter prescribed, that there are practical difficulties or particular hardships in the way of carrying out the strict letter of the regulations of this comprehensive amendment."

Upon study of this enactment we find no support for the legal position taken by plaintiffs. In our opinion, this portion of the ordinance presents only a general standard to be followed by the Board in event of "practical difficulties or particular hardships" in strict compliance with the zoning ordinance by the developer.

The next portion of the ordinance relied upon by plaintiffs is section 11.7—3 (Municipal Code of Chicago, ch. 194A, par. 11.7—3), which provides in pertinent part:

"The Board of Appeals may impose such conditions and restrictions upon the premises benefitted by a variation as may be necessary to comply with the standards set out in this Section 11.7—3 to reduce or minimize the injurious effect of such variation upon other property in the neighborhood and better to carry out the general intent of this comprehensive amendment."

■■ This language in its last portion clearly grants to the Board the power to impose "conditions and restrictions upon the premises benefitted by a variation * * *." However, in our opinion, it is clear from the following language that this power of the Board to impose "conditions and restrictions" is strictly limited to situations in which the Board can reduce or minimize "the injurious effect *of such variation* upon other property in the neighborhood * * *." (Emphasis added.) The words "of such variation" mean precisely that. They can apply only to the variation granted by the Board. Only conditions pertaining to the effect of the variation itself are within the power of the Board. In our opinion, it is manifest that the treatment of the east edge of the premises has no connection with the effect of the variance granted by the Board.

The authorities cited by plaintiffs in this regard are from other jurisdictions. We cannot find therein any reason for a different interpretation of the Chicago ordinances. *Township of Maplewood v. Tannenhaus* (1960), 64 N.J. Super. 80, 87, 165 A.2d 300, and *Watts v. City of Helena* (1968), 151 Mont. 138, 142, 439 P.2d 767.

The authority most relied upon by plaintiffs is *Zweifel Manufacturing Corp. v. City of Peoria* (1957), 11 Ill. 2d 489, 144 N.E.2d 593. That case involved a variation from use requirements as well as construction variations. (*Zweifel,* 11 Ill. 2d 489, 491.) Consequently, the Peoria Zoning Board imposed conditions upon the granting of the construction and use variations. After construction was completed and plaintiff had complied

with all conditions imposed by the Board, plaintiff sought further variations contrary to the accepted conditions. This attempt was denied by the circuit court and the supreme court. The hold of *Zweifel* is that a party who has accepted and retained the advantages of an order cannot later "attack the validity or propriety of conditions upon which its right to such advantages was expressly predicated." (*Zweifel*, 11 Ill. 2d 481, 493.) We note this description of the holding in *Zweifel* contained in *Naper Aero Club v. County of Du Page* (1964), 30 Ill. 2d 447, 450-51, 197 N.E.2d 1.

Other potent factors support the above conclusion. In *Zweifel*, the impermissible use sought by the builder affected the entire premises. In the case before us the only issue is a construction variation. The density used by the developer is less than permitted under applicable zoning. Also, as the corporation counsel points out in his brief, the proposed wall on the east edge of the premises was within ordinance limits as regards height and was therefore a completely legal use. (Municipal Code of Chicago, ch. 61, par. 61—5.2(d).) In addition, the record shows that the type of wall to which plaintiffs object may or may not finally be used in construction of the project.

■■ Finally, there are strong practical reasons for rejecting this contention of plaintiffs. The record shows that representatives of the interested parties held meetings and informal discussions regarding possible treatment of the east line of the project. We regard this type of negotiation as beneficial and in accordance with the traditional policy of courts to encourage amicable settlement. (*Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 192, 280 N.E.2d 552.) However, granting this power to the Board by enlarging its legal right to impose unrelated conditions regarding the grant of variations would inevitably lead to problems and unnecessary complications. This process might easily embroil the Board in an unseemly bargaining process completely foreign to and inconsistent with its quasijudicial function.

In our opinion, the Board imposed the only proper condition to granting the variation when it ruled, as stated in its resolution, that the grant was "upon condition that all applicable ordinances of the City of Chicago shall be complied with before a permit is issued."

■■ In addition, the chairman proposed that the balance of the construction project, entirely aside from the subject matter of the requested variation, "be further conditioned by such covenants relating to the Hyde Park Boulevard frontage of said property as may be valid and enforceable." The plaintiffs offered in evidence certain covenants recorded in Cook County, Illinois, on January 15, 1903, as Document No. 3342346. However, in offering the documents plaintiffs' counsel stated that plaintiffs did not ask the Board to pass upon these covenants. The chairman stated that the Board would not "try to construe them." Since

the matter of the covenants was not argued in the brief of plaintiffs (appellants) it was waived. (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *Collins v. Westlake Community Hospital* (1974), 57 Ill. 2d 388, 391-92, 312 N.E.2d 614; *People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 317, 332 N.E.2d 532.) We need not and will not comment further on this point.

## III.

Plaintiffs urge that the variation requested by the applicant would detrimentally affect the character of the neighborhood. This poses an issue of fact. In its final resolution the Board unanimously found that the rear yard variation which it granted was essential to the development of a project with less density than the existing ordinance permitted. The Board also found that the proposed variation "will not alter the essential character of the locality." The Board also found that without the variation the property in question could not be put to reasonable use. These are the findings of fact which plaintiffs now seek to overcome.

Findings of fact made by an administrative body are "prima facie true and correct." (Ill. Rev. Stat. 1977, ch. 110, par. 274.) It is the duty of this court as a reviewing court to ascertain "whether the findings and decisions of the administrative agency are against the manifest weight of the evidence." (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) In addition, "[n]either the appellate court nor the trial court may substitute its judgment for that of the administrative agency." *Davern*, 47 Ill. 2d 469, 472.

■■ In the case before us, as above shown, there is strong evidence in support of the application that the proposed variation would have no adverse effect on surrounding property. No contrary evidence regarding the variation itself and its possible effect was offered by plaintiffs. We accordingly conclude that the findings and the result reached by the Board regarding the ordinance are strongly and overwhelmingly supported by the evidence and are in accord with the manifest weight thereof. The decision of the Board was completely correct as was the decision of the trial court affirming it.

We have examined each of the contentions made by plaintiffs and find them to be without merit. The order appealed from is accordingly affirmed.

Order affirmed.

McGLOON and BUCKLEY, JJ., concur.