ILLINOIS LIQUOR CONTROL COMMISSION, Plaintiff-Appellant and Cross-Appellee, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants.—(ELVIS ROWLAND, Defendant-Appellee and Cross-Appellant.)

First District (4th Division)    No. 79-512

Opinion filed January 24, 1980.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellant.

Richard F. McPartlin, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

This action was brought under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), by the Illinois Liquor Control Commission (ILCC) to review a decision of the Illinois Civil Service Commission suspending ILCC Investigator Elvis Rowland for 90 days in addition to an initial suspension he received from ILCC. In the circuit court ILCC sought Rowland's discharge. Rowland had brought a separate action under the Administrative Review Act seeking reversal of his suspension. After consolidating the two actions the circuit court affirmed the decision of the Civil Service Commission. ILCC appealed and Rowland cross-appealed.

We affirm.

The written charges brought against Rowland state:

"1. On or about September 19, 1977, at approximately 3:30 p.m., at the Mirage Tavern, you participated in the solicitation of a gratuity from Jeff Allen, in concert with Nicholas Zekich, in violation of Ill. Rev. Stat. 1975, Chap. 43, Sec. 103;

2. On or about September 19, 1977, at approximately 3:30 p.m., at the Mirage Tavern, you participated in the acceptance of a $50.00 gratuity from Jeff Allen, in concert with Nicholas Zekich, in

violation of Ill. Rev. Stat. 1975, Chap. 43, Sec. 103;

3. You failed to report a violation of Ill. Rev. Stat. 1975, Chap. 43, Section 103, and Rule 3 of the Rules and Regulations of the Illinois Liquor Control Commission, in that a gratuity was solicited and accepted on the date, place, time and manner noted in charges one and two, which you knew or should have known was taking place.

4. You failed to report a violation of Ill. Rev. Stat. 1975, Chap. 43, Sec. 115(d), and Rules 3 and 25 of the Rules and Regulations of the Illinois Liquor Control Commission which you observed on the date, place and time noted in charges one and two, in that bottles of alcoholic beverages had price stickers affixed to them, indicating they had been purchased from a retail establishment."

Article III, section 7 of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 103) provides, *inter alia*, that no person employed by the ILCC shall solicit or accept any gratuity from any person subject to the provisions of the Act. Article V, section 1(d) of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 115(d)), states that "A retailer's license shall allow the licensee to sell and offer for sale at retail in the premises specified in such license alcoholic liquor for use or consumption, *but not for resale in any form * * *.*" (Emphasis added.) The applicable rules of the ILCC state in pertinent part:

"Rule 3. Violation of State Statute or City, Village or County Ordinance or Regulation

1. No person holding a license issued by this Commission shall in the conduct of the licensed business or upon the licensed premises:

(a) Violate any law of the State of Illinois

(b) Violate any city, village, town or county ordinance or resolution regulating the sale of alcoholic liquors

(c) Suffer or permit a violation of any law of the State of Illinois, or of any rule of this Commission

(d) Suffer or permit a violation of the city, village, town or county ordinance or resolution regulating the sale of alcoholic liquor.

\* \* \*

Rule 25. Transfer of Alcohol

The holder of a retail license for the privilege of selling alcoholic liquors at retail at the premises specified in such license, for use or consumption, is hereby restricted to such sale from the licensed premises only and is not permitted to sell or transfer such alcoholic liquor to any other licensed premises."

After a full evidentiary hearing on the charges before an ILCC hearing officer that officer found that the evidence fully supported charges 3 and 4 but did not support charges 1 and 2. On this basis the

officer recommended a 90-day suspension in addition to the suspension already imposed on Rowland by ILCC.[1] The Civil Service Commission adopted the findings, rulings and recommendations of the hearing officer. On appeal ILCC contends that a discharge should have been imposed either because charges 1 and 2 were also supported by the evidence or alternatively because the findings as to charges 3 and 4 in themselves justify a discharge. Rowland contends that the evidence did not even support charges 3 and 4.

At the Civil Service hearing John T. Mitchell, chief investigator for the ILCC, testified that in his job he supervised 10 agents, including Rowland and Zekich. These agents were responsible for conducting routine investigations of liquor licensees in Illinois. If an agent discovered a violation or a questionable violation he was required to submit this in a report to Mitchell. Mitchell and other officials would then review the report to determine the appropriate action to take. Mitchell had discussed the rules and regulations of the ILCC with Rowland and Zekich. He had given them several memoranda concerning the requirement that they report any offers of gratuities. At the hearing Mitchell also discussed the enforcement of Rule 25 concerning the prohibition of sale of liquor by one retail licensee to another. One indication that this was occurring would be the presence of price stickers on liquor bottles in a bar, although this did not necessarily indicate they had been purchased from retailers. If an agent observed such stickers his procedure should be to inquire about them, asking to see receipts for the purchases. If no such receipts were found on the premises then the agent would be required to report a violation.[2]

On September 19, 1977, Mitchell assigned Rowland and Zekich to investigate a number of taverns, including the Mirage. The daily work sheets he received from them concerning that investigation reported no violations, nor was there any report of a subsequent visit to the bar on September 20.

William Recktenwald testified that he had been employed by the Better Government Association of Chicago as an investigator. In that capacity he was one of the supervisors of an investigation into the plight of the small businessman in Chicago. That investigation was conducted by opening and conducting business at a tavern called the Mirage, from August 16, 1977, until the end of October 1977. Recktenwald worked in

---

[1] In the same proceedings before the Civil Service Commission, ILCC Investigator Nicholas Zekich was found to have actually solicited and accepted the gratuity referred to in charges 1, 2 and 3, and also was found guilty of the acts alleged in charges 3 and 4. His resulting discharge order is not before us in this cause.

[2] Mitchell also testified that both the establishment where the bottles were found and the retailer from whom they were purchased could be cited.

the tavern as a bartender along with Jeff Allen, who was also the president and incorporator of the business under the name Jeffal Lounge, Incorporated. On September 19, 1977, he and Allen were working behind the bar when Rowland and Zekich walked in, identified themselves, and announced that they were there to inspect the tavern. Recktenwald told them to go ahead and Zekich walked behind the bar while Rowland walked to the far east end of the bar, on the customers' side, and sat down. Zekich removed a number of liquor bottles bearing price tags from the rear bar and announced that they had serious trouble because the bottles had been purchased in a liquor store and not from a wholesaler. As Zekich removed the bottles he placed them on the bar directly in front of Rowland. Zekich also asked where the receipts for the bottles were. Allen and Recktenwald said they did not know and, after Allen unsuccessfully searched for them, Zekich told them they were in violation of the law and would have to be cited. He also informed them that they could be suspended up to 30 days. During this conversation Rowland was still sitting at the far end of the bar, while the other three men were behind the bar, 15 to 20 feet away. Allen and Zekich then walked to a booth near the south-east corner of the bar and began a conversation which Recktenwald could not hear. At one point Zekich walked to a telephone booth and made a call. While on the phone he pointed to a pinball machine and said something to Allen. He returned to the booth and again talked with Allen, then walked over to Rowland and spoke to him for about a minute. Recktenwald observed Rowland nodding his head up and down in an affirmative manner. Zekich returned to the booth and Allen then walked behind the bar to the main cash register. Recktenwald questioned him in a whisper as to whether he had been asked for something, but Allen told him he could not talk. Allen removed three $10 bills and four $5 bills from the register and placed them in a black folder. At this point Rowland and Zekich both walked to an area where the tavern's licenses were posted behind the back bar at the center of the north wall. All four men were behind the bar: Zekich faced west; Allen was in front of him, facing east; Recktenwald was four to five feet away, behind and to the side of Rowland, who was at Allen's right "looking at what was transpiring." Allen opened the black folder and Zekich reached in and removed the money. Rowland and Zekich then left the tavern, leaving the bottles on the bar. Recktenwald also testified that the bottles had not been purchased from another retail outlet, but had been delivered by a salesman for a liquor wholesaler.

Jeffrey Allen testified to the same occurrences with the following additions and variances. Zekich and Rowland arrived at 3:30 p.m. Zekich's comments about them being in violation of the law were directed to Rowland as Zekich placed the bottles in front of Rowland.

Allen was sure that Rowland heard these comments, but he did not believe that Rowland heard the conversation at the middle of the bar about the possibility of a suspension. During this latter conversation Allen and Recktenwald told Zekich they were not trying to hide anything and Allen added that he did not need a violation. Zekich persisted in telling them they were in violation but finally motioned for Allen to accompany him to the booth, which was about 12 feet from Rowland's position at the end of the bar. After some verbal sparring in which Allen expressed his desire to avoid the aggravation Zekich told him he would have to make "a few drops" and that it would depend on how much it was worth to Allen to get rid of the aggravation. He then told Allen he had to make a phone call, but that Allen knew how to solve the problem. While on the phone he said something to Allen about how he could take the money from the pinball machines. Allen could not hear the phone conversation, which lasted about three minutes.

When Zekich returned to the booth he told Allen that solving his problem depended on how much it was worth to him. Allen replied that there was not much money in the cash register. Zekich told him to state a figure and he would talk to his partner to see if it was okay with him. Finally, Allen asked how $50 sounded and Zekich said he would check with his partner. Allen could not hear what Zekich then said to Rowland but he too saw Rowland shaking his head affirmatively. Zekich returned to say Rowland would go along with the sum. Allen got the money from the register with Recktenwald watching. After Allen took out the money Rowland and Zekich walked behind the bar, joining him and Recktenwald. He recalled that Zekich and he were facing each other in the same manner described by Recktenwald. Rowland was behind and to the left of Allen, about one foot away. Recktenwald was next to Rowland. Just before Allen opened the folder he observed that Rowland was looking at the license on the back wall and writing something down. He did not see where Rowland was looking when Zekich took the money because he was watching Zekich, but he testified that Rowland would have been able to see Zekich if he had turned his head from looking at the license. Zekich took the money, looked at it briefly, then put it in his pocket. He had Allen sign something, gave him his card and told him to call if he had any problems. He also told Allen he should keep $50 in his pocket in case the police came and wanted a payoff. When the investigators left the bottles were still on the bar. Allen received no official warning from them nor was he cited for any violation.

The next day Zekich again walked in and asked if other inspectors had been there. He gave Allen a copy of the rules and regulations of the ILCC. When Zekich left Allen could see Rowland sitting in the car.

Irene Bahr, a technical advisor for the ILCC and an attorney, testified that at the request of Jack Wallenda, executive director of the ILCC, she witnessed a conversation between Wallenda and Rowland on January 13, 1978. Wallenda asked Rowland about allegations that he and Zekich took a bribe at the Mirage Tavern on September 19 or 20, 1977. Rowland denied taking a bribe and also denied any knowledge of a bribe occurring. However, he did state that they found one violation of the liquor control laws at the tavern, specifically stating they had found bottles of liquor bearing retail sales stickers with prices on them indicating they had been bought at retail. He also stated they did not issue a warning notice or seize the bottles. He offered no explanation for the failure to issue a warning notice. According to Bahr, Rowland also admitted that at a later date he and Zekich went back to find invoices for the liquor but did not find any.

Bahr testified that invoices relating to the sale or purchase of liquor from another retail establishment would be further evidence of whether or not a violation had occurred.

At the conclusion of the hearing the hearing officer found that as to Rowland charges 1 and 2 (as outlined above) were not sufficiently supported by the evidence, but found that charges 3 and 4 were so supported, and recommended a 90-day suspension in addition to the original suspension levied against Rowland by the ILCC. The officer had also found that the record contained no evidence marring the credibility of Allen or Recktenwald.

## I.

■■ ILCC asked the circuit court and now asks this court to hold that charges 1 and 2 were supported by the evidence and to either order that Rowland be discharged or require a new hearing on the appropriate sanction by the Civil Service Commission. However, they have cited no case law supporting our authority to modify the determination of the Civil Service Commission in this manner, nor does the Administrative Review Act contain any such explicit grant of authority to make additional findings of violations or increase penalties imposed. The one case upon which ILCC relies, *Department of Registration & Education v. Aman* (1972), 3 Ill. App. 3d 784, 279 N.E.2d 114, *aff'd* (1973), 53 Ill. 2d 522, 292 N.E.2d 897, is inapposite. In *Aman* the defendant, having been discharged by the Department, sought a hearing by the Civil Service Commission. The hearing officer recommended his discharge but the Commission overruled this recommendation, requiring that the defendant be retained. When the Department sought an administrative review in the circuit court that court dismissed the action, holding that the

determination was not reviewable at the instigation of the appointing authority. On appeal the sole issue was whether the Department had standing to seek administrative review of the determination of another governmental body, the Civil Service Commission. This court, and subsequently the Illinois Supreme Court, found no impediment in the constitution to such an action and held that there was statutory authority for the action. The question of the power of the circuit court to increase the sanction imposed by the Commission was not addressed by either reviewing court. Nor do we need to reach this issue here since we find that the Civil Service Commission's resolution of the charges and the penalty imposed by them were proper.

The principles guiding our review of this case are well-established. The findings and conclusions of the administrative agency, in this case the Civil Service Commission, on questions of fact are prima facie true and conclusive. (*McKey & Poague, Inc. v. Stackler* (1978), 63 Ill. App. 3d 142, 379 N.E.2d 1198; Ill. Rev. Stat. 1977, ch. 110, par. 274.) Our function is not to substitute our judgment for that of the agency (*Allender v. City of Chicago Zoning Board of Appeals* (1978), 63 Ill. App. 3d 204, 381 N.E.2d 4), but rather we must determine whether that body's decision was contrary to the manifest weight of the evidence. (*Rincon v. License Appeal Com.* (1978), 62 Ill. App. 3d 600, 378 N.E.2d 1281.) And in order for us to reverse the agency's determination the opposite result must clearly be evident. (*McKey.*) In sum, although our reviewing function is not illusory it is severely limited in scope. *Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782, *appeal dismissed* (1978), 435 U.S. 911, 55 L. Ed. 2d 502, 98 S. Ct. 1463.

## Charge 1

■■ ILCC first contends that the Commission's determination that Rowland did not participate in the solicitation of a gratuity was contrary to the manifest weight of the evidence. We find that the evidence fully supported this conclusion of lack of participation. There was no evidence suggesting that Rowland was able to hear Zekich in his conversation with Allen at the booth where the solicitation actually took place. Although Zekich told Allen he would check with his partner and then talked to Rowland, no one heard this conversation, so that we could only speculate on the significance of Rowland nodding his head. Such speculation is not our function on review, and the hearing officer below specifically held that such speculation was insufficient. ILCC's contention that the initial finding of a violation by Zekich was part of a solicitation scheme may well be the case, but again, at most, Rowland only observed this, and without evidence that he knew of the actual solicitation, it cannot be said to have

been part of his plan. Nor does *his* subsequent failure to report a bribe establish his participation in the solicitation of that bribe.

## Charge 2

■■ ILCC's second contention, that the evidence did not support the finding that Rowland did not participate in the acceptance of a gratuity, is based on its contention that the hearing officer erroneously found that there was no evidence that Rowland saw Zekich take the money and put it in his pocket. We agree that this finding was manifestly erroneous and was contrary to clear evidence which the hearing officer herself had summarized. However, we do not hold, as the ILCC urges, that viewing this transaction constituted participation in it. Recktenwald testified that as the bribe transaction occurred Rowland was standing next to Allen, looking at what transpired. Allen did not look at Rowland at the instant the transaction occurred, it was just before that that he saw Rowland looking at the license on the wall and writing something down. Thus, this testimony did not conflict on the crucial question of where Rowland was looking when Zekich took the money. And although Recktenwald and Allen differed on whether Rowland was standing to Allen's right or left, they agreed that he was next to Allen. Allen placed him right next to his shoulder, only a foot away, and said he was in a position to see Zekich if he looked at him. Recktenwald affirmatively stated Rowland was watching the occurrence. Thus, contrary to the puzzling declaration of the hearing officer on this question, the evidence established without contradiction that Rowland did witness the transaction. Indeed, in another finding in the record the hearing officer stated that "* * * although Respondent Rowland did not participate in soliciting or accepting a bribe, he was aware that such an occurrence did, in fact, take place." Because there was no evidence that Rowland was aware of the solicitation, we construe this finding to mean that Rowland was aware of the acceptance of the bribe. But Rowland's awareness that Zekich accepted the money does not establish participation in that acceptance, nor is such participation proven by the fact that Rowland did not report that occurrence. Accordingly, despite our rejection of the one contradictory finding of the hearing officer on the question of what Rowland saw, we find that the evidence fully supported the officer's ultimate conclusion that there was no participation by Rowland in that act.

## Charge 3

It is evident from our discussion of charge 2 that we find no merit in Rowland's claim that charge 3, concerning failure to report acceptance of

a gratuity, was unsupported by the evidence. If Rowland watched Zekich take the money from Allen, as we have indicated the factual findings of the hearing officer clearly show he did, then his subsequent failure to report that fact was clearly proof of this charge.

## Charge 4

■ Rowland's claim of the insufficiency of the evidence as to charge 4 is based on the following analysis. Article V, section 1(d) of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 115(d)), and ILCC Rule 25 refer only to the sale of liquor to another retailer; here the only act shown, if any, was the purchase of liquor. Furthermore, there was testimony that stickers alone did not establish a violation, so that it was within the discretion of the investigators not to find a violation. Rowland also notes that at the hearing Recktenwald and Allen stated that the bottles had been obtained from a wholesaler's agent, so that there was no violation. This argument does not withstand scrutiny. Rowland has omitted ILCC Rule 3, also cited in charge 4. That rule states, *inter alia,* that no licensee should, in the conduct of his licensed business, "suffer or permit" any violation of State law. Thus, it would be a violation for the licensee here to have permitted the sale of liquor at retail to his business. Rowland's supervisor, Mitchell, also testified that both the seller and the buyer could be cited upon a finding of a retail-to-retail sale of liquor, although he added that commonly it was the licensee where the liquor was found (thus the *buyer*) who would be cited. The question of whether ultimately Mirage was in violation is also not relevant. Mitchell's testimony established that when liquor bottles with price stickers were found and receipts were not produced by the licensee on the premises, a violation should be reported. It would then be his function to determine the ultimate disposition. Rowland, of course, observed the bottles with price stickers on them, they were placed in front of him by Zekich who stated to him that the establishment was in violation. According to the testimony of Bahr, Rowland subsequently admitted that they had found such a violation and that receipts were not found. Thus, the objective criteria for reporting the violation were present, bottles with price stickers and no available receipts; the active investigating agent, Zekich, was heard by Rowland to determine that the violation existed; Rowland himself admitted that they had found the violation; and yet it was not reported. The evidence left no doubt that Rowland failed to report a violation, as stated in charge 4.

## II.

■ Finally, ILCC contends that the 90-day suspension which Rowland received was insufficient, even assuming he was properly found guilty of only the two latter charges. As we have noted, we have been presented

with no authority permitting us to increase such penalties upon review of an administrative hearing. But we do not reach the issue of our power to do so, as we find that the suspension imposed was not an arbitrary exercise by the Civil Service Commission. Rowland was not found to have committed the overt acts which resulted in the discharge of his partner. Nor was there any evidence presented that he had been involved in any previous rule violations. We cannot say that the suspension imposed was unsupported by the record or was so inadequate as to constitute an abuse of discretion.

The judgment of the trial court affirming the disposition by the Civil Service Commission is affirmed.

Affirmed.

LINN, P. J., and JOHNSON, J., concur.